**Not Intended for Publication**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
DO YEA KIM,                                               :

            Plaintiff,                           :  <u>REPORT AND RECOMMENDATION</u>

   -v.-                                                         :

                                        05 Civ. 8560 (GBD) (GWG)
167 NAIL PLAZA, INC., et al.,                       :

            Defendants.                      :
-----------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

      Plaintiff Do Yea Kim has made unopposed motions for attorney's fees and for prejudgment interest. We address each motion below.

I.     <u>MOTION FOR ATTORNEY'S FEES</u>

      The application for attorney's fees arises in an unusual posture. There are two individual defendants and two corporate defendants against whom the award is sought. While all four parties were represented throughout this case and at trial by counsel, counsel was relieved following the trial verdict. <u>See</u> Memorandum Endorsed, filed Sept. 16, 2008 (Docket # 63). The corporations and the individual defendants decided not to hire new counsel. <u>See</u> Order, filed Sept. 18, 2008 (Docket # 64). At a conference held on September 16, 2008, the individual defendants were informed of their right to submit papers <u>pro</u> <u>se</u> in response to the application for attorney's fees but have elected not to do so.

      Accordingly, the plaintiff's application for attorney's fees is unopposed. There might be reasons to grant the application in its entirety without further analysis. After all, the defendants have stated no opposition to a judgment being rendered against them in any amount. In addition, the amount awarded by the Court will have no practical effect inasmuch as it has been reported that the corporate defendants are insolvent, the individual defendants have no assets, and the individual defendants intend to file for bankruptcy once a judgment for attorney's fees is entered

in this case. The failure of the defendants to submit papers in opposition to the application also means that the Court has not been given any assistance in gauging the various claims made in the application.

Nonetheless, to simply grant the application in its entirety would arguably be inconsistent with the spirit of Fed. R. Civ. P. 55(b)(2), which requires a Court to make a determination of damages even in the case of default as long as a sum certain is not sought in the complaint. Accordingly, the Court will use the imperfect information available to it in order to adjudicate the motion.

A court in an action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." Id. § 216(b). Fees are also awardable with respect to the state law claims pursuant to New York Labor Law § 198. See, e.g., Guardado v. Precision Financial, Inc., 2008 WL 822105, at *2 (E.D.N.Y. Mar. 25, 2008).

As the Second Circuit noted in Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182 (2d Cir. 2008), "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate." Id. at 186 (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). This figure has commonly been referred to as the "lodestar" – a term that Arbor Hill eschews in favor of the term "presumptively reasonable fee." Id. at 183.

  A. Reasonable Hours

It is well established that "any attorney . . . who applies for court-ordered compensation in this Circuit . . . must document the application with contemporaneous time records . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983). Here, the parties have submitted summaries of contemporaneous time records, which is a permissible substitute for submission of the records themselves. See, e.g., Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160-61 (2d Cir. 1994); Johnson v. Kay, 742 F. Supp. 822, 837 (S.D.N.Y. 1990). The Court's task is to make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994). The critical inquiry is "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992) (citation omitted), cert. denied, 506 U.S. 1053 (1993); accord Nike, Inc. v. Top Brand Co., 2006 WL 2946472, at *5 (S.D.N.Y. Feb. 27, 2006), adopted by 2006 WL 2884437 (S.D.N.Y. Oct. 6, 2006).

Additionally, if a court finds that claimed hours are "excessive, redundant, or otherwise unnecessary," it should exclude those hours from its "lodestar" calculation. Hensley, 461 U.S. at

434; accord Quaratino v. Tiffany & Co., 166 F.3d 422, 426 n.6 (2d Cir. 1999); Gierlinger v. Gleason, 160 F.3d 858, 876 (2d Cir. 1998); Luciano v. Olsten Corp., 109 F.3d 111, 116-17 (2d Cir. 1997); In re Stock Exch. Options Trading Antitrust Litig., 2006 WL 3498590, at *11 (S.D.N.Y. Dec. 4, 2006). However, the Supreme Court noted in Hensley that "[t]here is no precise rule or formula for making these determinations." 461 U.S. at 436. And, because "it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application," Carey, 711 F.2d at 1146, "the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application,'" Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (quoting Carey, 711 F.2d at 1146). Thus, a district court is not required to "set forth item-by-item findings concerning what may be countless objections to individual billing items." Lunday, 42 F.3d at 134.

If there were ever an appropriate case in which to apply an across-the-board percentage cut, it is this one, where the plaintiff's adversary has not undertaken the exercise of assisting the Court as to which hours were or were not inappropriate and where plaintiff has not explained the need for the large number of attorneys on this case nor provided a breakdown of how many hours were devoted to the various stages of the litigation. In any event, "[p]articularly where the billing records are voluminous, it is less important that judges attain exactitude, than that they use their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent." Alveranga v. Winston, 2007 WL 595069, at *5 (E.D.N.Y. Feb. 22, 2007) (internal quotation marks and citations omitted); accord Saunders v. Salvation Army, 2007 WL 927529, at *3 (S.D.N.Y. Mar. 27, 2007) ("Rather than comb through detailed time sheets, a court can 'exclude excessive and unreasonable hours from its fee computation by making an across-the-board reduction in the amount of hours.'") (quoting Luciano, 109 F.3d at 117).

The Court approaches this matter by asking what would have been an appropriate total number of attorney-hours to spend in this case. This case was procedurally simple in comparison with many wage or employment cases. The record does not reflect that either party filed any discovery motions or even that the parties were forced to seek Court intervention with respect to any discovery disputes. Essentially, there was a complaint, an answer, a half-day settlement conference, discovery, and an unopposed motion for partial summary judgment on a legal point that was filed just prior to trial. The plaintiff reports that as part of discovery both sides took a combined total of nine depositions. There is no reference to any unusual number of documents that had to be reviewed (and presumably plaintiff did not have many to produce herself). The trial lasted only four days. The case was complicated only by the need for interpreters for many witnesses and by the fact that, after trial, defendants filed motions for judgment as a matter of law, a new trial, and remittitur.

The total number of hours plaintiff seeks (after some laudable voluntary reductions by the plaintiff) are 1778.7 hours including paralegal time. In light of the relative simplicity of this case and the shortness of the trial, the Court has no trouble concluding that an award of 1778.7 hours would be excessive. Case law reflects that this figure is higher than what has been claimed or allowed in many civil rights, wage or employment cases with a short trial. See, e.g., Luca v.

County of Nassau, 2008 WL 2435569, at *7-8 (E.D.N.Y. June 16, 2008) (618.9 hours sought and deemed reasonable for litigation that "spanned more than three year[s] and has been vigorously defended at every stage; . . . resulted in a motion for summary judgment, a motion for reconsideration, a six-day trial and a two-day evidentiary hearing on front pay"); Cruz v. Henry Modell & Co., 2008 WL 905351, at *1, 12 (E.D.N.Y. Mar. 31, 2008) (343.1 hours approved for civil rights case resulting in six-day trial); Simmons v. New York City Transit Auth., 2008 WL 630060, at * 4-7 (E.D.N.Y. Mar. 5, 2008) (697.5 hours awarded for case with "protracted period of discovery that spanned nearly four years," dispositive motions by both sides, a six-day trial that resulted in a mistrial and second five-day trial that involved the examination of 13 witnesses); Petrovits v. New York City Transit Auth., 2004 WL 42258, at *1, 3, 6 (S.D.N.Y. Jan. 7, 2004) (885.22 hours for employment discrimination case involving a summary judgment motion, 10 depositions, and a six-day jury trial).

  Further, the Court notes that plaintiff is seeking hours for eight attorneys on this matter. While Carey indicates that it may be appropriate to have a "second" attorney on a matter, 711 F.2d at 1146, and some case law reflects awards for even more attorneys, no showing has been made as to the need for or role of each of the eight attorneys on this case. This Court routinely sees cases brought under the FLSA where a single attorney for plaintiffs handles the entire matter. The defendants here had a single attorney. The billing records suggest that as many as five of plaintiff's attorneys (and one paralegal) were in the courtroom for trial. Nothing in the plaintiff's application explains why plaintiff needed to have such a large number of attorneys.

  Six of the attorneys claim, after the voluntary reduction, between 143 and 449 hours each. Two attorneys seek only 3.7 and 40.7 hours respectively. Because of the paucity of their hours and the absence of an explanation of the necessity for their services, the Court will eliminate the hours of these two attorneys entirely. As for the remaining six attorneys, the Court has no basis for picking and choosing who did the work on this matter that was necessary for the prosecution of the lawsuit. Accordingly, the better course is to simply reduce proportionally each of the remaining attorney's hours to arrive at a total number of hours on the case that is reasonable. In light of the lack of major discovery disputes, the lack of an unusually large number of depositions, the failure to claim that there was any significant document discovery, the lack of significant motion practice, and the very short trial involved, the Court believes that a reduction of 40% of attorney hours, resulting in fees being awarded for 1039 hours of attorney or paralegal work on this case, is more than generous. The Court notes that many other cases have instituted 40% reductions where appropriate. See, e.g., Cho v. Koam Med. Servs. P.C., 524 F. Supp. 2d 202, 210 (E.D.N.Y. 2007); Alveranga, 2007 WL 595069, at *6; O'Grady v. Mohawk Finishing Prods., Inc., 1999 WL 30988, at *5 (N.D.N.Y. Jan.15, 1999); accord American Lung Ass'n v. Reilly, 144 F.R.D. 622, 627 (E.D.N.Y. 1992) (deducting 40% of plaintiffs' hours and finding that "the use of so many lawyers . . . was excessive and led to duplication of work"). In addition, even a cursory review of the time records show some questionable billing entries, such as time billed for preparing for a post-verdict press conference and time billed to negotiate a settlement on behalf of a plaintiff other than Kim.

B.     Reasonable Hourly Rate

Arbor Hill made clear that a "reasonable" hourly rate is "what a reasonable, paying client would be willing to pay." 522 F.3d at 184. Thus, "the district court (unfortunately) bears the burden of disciplining the market, stepping into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively." Id. (emphasis added). In addition, the rate to be set for the plaintiff's attorneys must be "'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" Reiter v. MTA New York City Transit Auth., 457 F.3d 224, 232 (2d Cir. 2006) (quoting Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984)) (insertion in original), cert. denied, 127 S. Ct. 1331 (2007).

To determine an appropriate hourly rate, Arbor Hill directs that a court should engage in the following process:

> the district court, in exercising its considerable discretion, [is] to bear in mind all of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate. The reasonable hourly rate is the rate a paying client would be willing to pay. In determining what rate a paying client would be willing to pay, the district court should consider, among others, the Johnson factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively. The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case. The district court should then use that reasonable hourly rate to calculate what can properly be termed the "presumptively reasonable fee."

522 F.3d at 190 (emphasis in original). The "Johnson factors" are those laid out in the case of Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). These factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Arbor Hill, 522 F.3d at 186 n.3 (citing Johnson, 488 F.2d at 717-19). Arbor Hill specifically identified the following factors to be considered in determining what a reasonable, paying client would be willing to pay:

5

>the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have had an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

Id. at 184.

The fee applicant bears the burden of establishing the reasonableness of the hourly rates requested – in particular, by producing satisfactory evidence that the requested rates are in line with those prevailing in the community. Blum, 465 U.S. at 895 n.11; 601 W. Assocs. LLC v. Kleiser-Walczak Constr. Co., 2004 WL 1117901, at *3-4 (S.D.N.Y. May 18, 2004).

While plaintiff has provided evidence that the private law firm involved in this case charges the rates indicated, and that a boutique employment litigation firm charges similar rates, this is a far cry from showing that a "reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively," Arbor Hill, 522 F.3d at 184, would have contracted to pay the rates requested. The Court has considered all of the factors in Johnson and Arbor Hill and notes the fact that this case was not unusually complex; that plaintiff had to face off against a single attorney, a solo practitioner, who served as counsel for all the defendants; that there were no particular timing demands on the case; and that the attorneys obtained a reputational benefit from taking on this case pro bono.

In considering the appropriate rate, this Court has also relied on its own knowledge of the rates charged by practitioners. See generally McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund, 450 F.3d 91, 96-97 (2d Cir. 2006) ("A district court may also use its knowledge of the relevant market when determining the reasonable hourly rate.") (citing Miele v. New York State Teamsters Conference Pension & Ret. Fund, 831 F.2d 407, 409 (2d Cir. 1987)); Farbotko v. Clinton County, 433 F.3d 204, 209 (court may consider its "own familiarity with the rates prevailing in the district"). This knowledge derives largely as a result of the Court's participation in settlement conferences, in which the Court in its private discussions often asks attorneys to reveal their hourly rates.

Also important to the Court's consideration of the appropriate rate is the fact that only one of the six attorneys for whom compensation is being awarded, Steve Choi, has demonstrated any experience in FLSA litigation. In some instances, courts have awarded high rates to an attorney who is highly experienced in a particular area of litigation. See, e.g., Sheehan v. Metro. Life Ins. Co., 450 F. Supp. 2d 321, 328 (S.D.N.Y. 2006) ($425/hour reasonable for partner with "decades of experience," who delivered an "effective and thoroughly professional performance"); Kuper v. Empire Blue Cross & Blue Shield, 2003 WL 23350111, at *9-10

6

(S.D.N.Y. Dec. 18, 2003) ($425/hour reasonable for attorney with "thirty-five years of litigation experience in the fields of labor and employment law, particularly employment discrimination"), adopted by 2004 WL 97685 (S.D.N.Y. Jan. 20, 2004); New York State Nat'l Org. for Women v. Pataki, 2003 WL 2006608, at *2-3 (S.D.N.Y. Apr. 30, 2003) ($400/hour and $430/hour reasonable for two attorneys who "both have more than 30 years of experience with civil rights and labor and employment law"). But these rates are not appropriate for Choi since he has nowhere near the number of years of experience of these attorneys. Moreover, case law is also replete with instances where even experienced attorneys have been awarded far lower rates. See Tlacoapa v. Carregal, 386 F. Supp. 2d 362, 370 (S.D.N.Y. 2005) ($250/hour for lead attorney and $125/hour for junior attorney); Pascuiti v. New York Yankees, 108 F. Supp. 2d 258, 266 (S.D.N.Y. 2000) (awarding $250/hour for attorneys with almost 30 years experience in civil rights litigation); see also Cowan v. Ernest Codelia, P.C., 2001 WL 30501, at *10 (S.D.N.Y. Jan. 12, 2001) (awarding a sole practitioner who had been an "active civil rights litigator for many years" an hourly rate of $250), aff'd, 50 Fed. Appx. 36 (2d Cir. 2002). In Pascuiti, the court surveyed case law on hourly rates and found that as of 2000, "the range of fees in this District for 'seasoned civil rights litigators,' particularly those in small firms, is between $200/hr and $300/hr." 108 F. Supp. 2d at 266 (citations omitted). Even including a standard inflation factor (as provided by the Bureau of Labor Statistics), the range for these "seasoned" litigators would be $254-381 today. Junior attorneys have been awarded far less. See, e.g., Tlacoapa, 386 F. Supp. 2d at 370 ($125/hour for junior attorney in 2005) (citing Lawson v. City of New York, 2000 WL 1617014, at *4-5 (S.D.N.Y. Oct. 27, 2000)).

Based on all the factors discussed above, especially the fact that there is no evidence that any of the attorneys, other than Choi, has any experience in FLSA litigation, the Court concludes that the hourly rates in the following chart are appropriate. While Choi has some experience, he graduated from law school only four years ago and this fact figures heavily in the Court's decision as to an appropriate rate. The Court is awarding $200 for his time because of his extensive and concentrated experience in Fair Labor Standards Act cases since his graduation. The remaining attorneys, even those who are graduated law school slightly earlier, are compensated at lower rates because no information has been provided as to "the experience, reputation, and ability" of any of the attorneys associated with the large firm. Arbor Hill, 522 F.3d at 186 n.3 (citing Johnson, 488 F.2d at 717-19). Accordingly, we award a $175 rate to the three attorneys who graduated between 2001 and 2003, and $150 to the two attorneys who graduated in 2006.

As for the paralegals, because we have been given no information whatsoever as to their experience and expertise, we will instead award an hourly rate of $50, which we view as being commensurate with the rates being awarded to the attorneys on this case. See General Motors Corp. v. Villa Marin Chevrolet, Inc., 240 F. Supp. 2d 182, 188 (E.D.N.Y. 2002) (reducing fees sought for paralegals because no information was submitted regarding their experience or expertise).

A current rate is being applied because where litigation spans a number of years, the reasonable hourly rate should be adjusted to account for "the delay factor, either by basing the

award on current rates or by adjusting the fee based on historical rates to reflect its present value." Missouri v. Jenkins, 491 U.S. 274, 282 (1989) (citation omitted); accord Raniola v. Bratton, 2003 WL 1907865, at *6 (S.D.N.Y. Apr. 21, 2003).

Next to each rate is the number of hours allowed following the 40% reduction.

| Attorney | Hours Allowed | Rate | Total |
|---|---|---|---|
| Barry Kamar | 138 | $150 | $20,700 |
| Amir Weinberg | 97 | $175 | $16,975 |
| Andre Espinosa | 270 | $175 | $47,250 |
| Joshua Hurwit | 94 | $150 | $14,100 |
| Margaret Sweeney | 86 | $175 | $15,050 |
| Steve Choi | 158 | $200 | $31,600 |
| Paralegals | 196 | $50 | $9,800 |
| Total | 1039 | — | $155,475 |

Arriving at this total "does not end the inquiry," however. Hensley, 461 U.S. at 434. There are other considerations that may lead a court to adjust the fee upward or downward. Id. The lodestar figure may be adjusted on the basis of the "results obtained." Id. "Indeed 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" Farrar v. Hobby, 506 U.S. 103, 114 (1992) (quoting Hensley, 461 U.S. at 436). Thus, where a party prevails, but obtains far lesser relief than might have been expected, case law reflects that a court consider an adjustment in the lodestar amount. See, e.g., Parrish v. Sollecito, 280 F. Supp. 2d 145, 173 (S.D.N.Y. 2003). Here, the results achieved were excellent and there is no basis for a reduction.

    C.    Costs

An award of attorney's fees should "'include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998) (quoting U.S. Football League v. Nat'l Football League, 887 F.2d 408, 416 (2d Cir. 1989)). Here plaintiff has asked for less than her actual expenditures for costs and seek only the amounts paid for translation services, court fees, and court-reporting services, for a total of $26,098.80. These costs are specifically permitted by statute, see 28 U.S.C. § 1920(1), (2), and (6), and thus should be allowed.

Summary

Plaintiff's attorney's fee and costs application should be granted as follows:

| | |
|---|---|
| Attorney's fees | $ 155,475.00 |
| Costs | $ 26,098.80 |
| TOTAL | $ 181,573.80 |

## II.   MOTION FOR PREJUDGMENT INTEREST

As was true of the motion for attorney's fees, the request for prejudgment interest is also unopposed. A judgment was previously awarded in this matter in accordance with the Court's July 7, 2008 Opinion. See Judgment, filed July 15, 2008 (Docket # 48). Plaintiff thereafter made an application to amend the judgment (by letter dated July 8, 2008) to obtain such interest, and such application was timely pursuant to Fed. R. Civ. P. 59(e).

Plaintiff seeks to obtain prejudgment interest of 9% under N.Y. C.P.L.R. § 5001-02 with respect to her state law labor claims. Such interest has been approved by case law. See, e.g., Yang v. ACBL Corp., 427 F. Supp. 2d 327, 341 (S.D.N.Y. 2005); Liu v. Jen Chu Fashion Corp., 2004 WL 33412, at * 5 (S.D.N.Y. Jan. 7, 2004); accord Heng Chan v. Sung Yue Tung Corp. 2007 WL 1373118, at * 9 (S.D.N.Y. May 8, 2007) ("Prejudgment interest may be awarded on state claims pursuant to N.Y. C.P.L.R. § 5001 even where liability is also found under the FLSA.") (citation omitted).

Plaintiff was awarded overtime wages under her state law claim in the amount of $12,783.10 (the difference between the total award for overtime wages of $23,242 minus the liquidated damages awarded under the FLSA of $10,458.90). See Memorandum Decision and Order, filed July 7, 2008 (Docket # 46), at 8. Interest at 9% should run on this amount from the midpoint date of the three-year period for which wages were awarded and for which no federal liquidated damages were awarded (that is, the period of October 7, 1999 to October 7, 2002), which is April 7, 2001. See, e.g., Liu, 2004 WL 33412, at * 5 (using midpoint date to calculate interest on claim based on lost wages); Marshall v. Burger King Corp., 509 F. Supp. 353, 356 (E.D.N.Y. 1981) (same). Thus, plaintiff is entitled to interest of $3.15 per day starting April 7, 2001 and continuing until the date of judgment for her unpaid overtime claim under state law.

Kim was awarded $85,590 in damages on her state law retaliation claim to compensate her for lost wages that occurred after her termination on March 19, 2005. It appears that this award was to compensate for wages lost from the date of her termination up until the time of the verdict, which plaintiff fixes at July 7, 2008. Accordingly, she seeks interest from the midpoint date of this period, which is November 12, 2006. The Court accepts this date as reasonable. Thus, plaintiff is entitled to interest of $21.09 per day starting November 12, 2006 and continuing until the date of final judgment for her retaliation claim under state law.

Conclusion

      Plaintiff's motions for attorney's fees and for an amended judgment reflecting prejudgment interest (Docket ## 52 and 55) should be granted. Accordingly, an amended final judgment should be entered in favor of plaintiff and jointly and severally against all defendants consisting of the sum of the following numbers: (1) $159,500.90, which is the award contained in the decision of July 7, 2008; (2) $181,573.80, for attorney's fees and costs; and (3) prejudgment interest of (a) $3.15 per day starting April 7, 2001 until the date of final judgment; and (b) $21.09 per day starting November 12, 2006 until the date of final judgment.

**PROCEDURE FOR FILING OBJECTIONS TO THIS**
**REPORT AND RECOMMENDATION**

      Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a), (b), (d). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. George B. Daniels, and to the undersigned, at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Daniels. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140 (1985).

Dated:  November 24, 2008
         New York, New York

                                                    GABRIEL W. GORENSTEIN
                                                   United States Magistrate Judge

Copies sent to:

Steven Kyung Choi
YKASEC
136-19 41st Ave, 3rd Floor
Flushing, NY   11355

Moses Silverman
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York , NY 10019

Dong Rim Park
Mou San Rim
116 Dean Drive, Apt # 1
Tenafly, NJ  07670

Conclusion

Plaintiff's motions for attorney's fees and for an amended judgment reflecting prejudgment interest (Docket ## 52 and 55) should be granted. Accordingly, an amended final judgment should be entered in favor of plaintiff and jointly and severally against all defendants consisting of the sum of the following numbers: (1) $159,500.90, which is the award contained in the decision of July 7, 2008; (2) $181,573.80, for attorney's fees and costs; and (3) prejudgment interest of (a) $3.15 per day starting April 7, 2001 until the date of final judgment; and (b) $21.09 per day starting November 12, 2006 until the date of final judgment.

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a), (b), (d). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. George B. Daniels, and to the undersigned, at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Daniels. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140 (1985).

Dated: November 24, 2008
      New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies sent to:

Steven Kyung Choi
YKASEC
136-19 41st Ave, 3rd Floor
Flushing, NY   11355

Moses Silverman
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019